PENNINGTON *v.* WOODS.

4-6707                                                        161 S. W. 2d 16

Opinion delivered April 6, 1942.

*Marvin B. Norfleet,* for appellant.

*Coleman, Mann, McCulloch & Goodwin,* for appellee.

HUMPHREYS, J.   On January 20, 1920, W. R. Alder sold and conveyed to Alex A. Pennington the following land in St. Francis county, Arkansas, to-wit: The south

half of the northwest quarter of section twenty, township six north, range six east, containing eighty acres, more or less.

The warranty deed thereto was filed for record on January 21, 1920, and duly recorded on the 22d day of January, 1920.

At the time of the purchase Alex A. Pennington, a widower, moved upon and occupied the farm which was improved and fenced on all sides. The fence on the north side was practically a new fence at that time. He married on December 27th or 28th, 1920, and several weeks thereafter W. R. Alder paid them a visit and walked with them all over the farm and pointed out the lines or fences enclosing the farm. W. R. Alder was showing them the lands and boundaries thereof which he had sold Alex A. Pennington in January, 1920. In looking over the land they started at the northeast corner of the tract and followed the fence to the northwest corner and then around the farm to each corner. The fence on the north line consisted of posts and three wires, the wire being nailed occasionally to a tree which was in line. Alex A. Pennington and Josie, his wife, resided upon the land together and reared two boys, Darien and Mabry. Alex A. Pennington cultivated a portion of the land and used a part of it for pasture up to the fence on the north side, beginning with his purchase thereof and until 1935 when he died, and after his death appellants cultivated and pastured the lands in the same way up to the north line fence. During his occupancy Alex A. Pennington constructed a small barn and tenant house on or near the north line fence, which was continuously used by him and appellants. At the time of his death in 1935, he was the owner of the eighty-acre tract and other lands in St. Francis county, Arkansas, and he left surviving him his wife, Josie Pennington, and two minor children by Josie and several children by his first wife. After his death, in a partition suit of all the lands he owned, the fee simple title to the eighty-acre tract was vested in the two minor children, Darien and Mabry, subject to the dower and homestead right of his widow, Josie Pennington. During the occupancy of the land by Alex A. Pennington and by

his widow and minor children, bushes and trees grew up along the north fence so that in referring to it it was spoken of as the old fence row. The fence in the old fence row was never changed save that new posts were set in the line or fence from time to time and on the east end for about 300 feet a new fence was built where it had been washed out by the flood of 1927, but the new fence was set in the same place that the old fence had occupied. The old fence has served as the division line between the eighty acres in question and the eighty acres to the north all these years, that is, since about 1915, and those who cultivated the land on each side cultivated it up to the old fence row.

After the death of Alex A. Pennington, Josie Pennington was duly appointed guardian by the probate court for the minors, Darien and Mabry. Thus the matter stood with no one questioning the ownership of the Penningtons to the land included or embraced within the fences around said eighty-acre tract until about four or five years after Alex A. Pennington died.

In 1936, Eugene Woods purchased the eighty-acre tract north of the Pennington eighty-acre tract and he did or said nothing about the old fence row not being the correct division line between the two eighty-acre tracts until he concluded that the old fence row was not straight enough to suit him. There was a slight zig-zag occasionally in the old fence row. He then employed Burton F. Williams, an engineer and surveyor, to run the division line between the two eighty-acre tracts according to the government calls in their respective deeds, but had no agreement with Mrs. Pennington and her minor sons to run such a survey and did not notify them that he was going to do so. The Williams survey varied from the old fence row some twenty or thirty feet on the east end and crossed the old fence row and ran two or three feet north of same. He established the east and west corners and the survey had the effect of depriving Mrs. Josie Pennington and the minor heirs of about one acre of land all together. After Williams made the survey, Eugene Woods employed a crew of men to build a new fence

conforming to said survey and when they entered upon the land to comply with his directions Mrs. Josie Pennington objected and asked them not to trespass upon her land. The crew had been told by Eugene Woods to build the fence "whether or no," unless stopped by a legal proceeding. When they continued work on the new fence over her protest, she interviewed the prosecuting attorney and had them arrested.

Just what became of the criminal proceeding does not appear in this record, but at the time they were arrested, on the same day, Mrs. Josie Pennington, in her own behalf and as guardian for the minors, brought suit in the chancery court of St. Francis county, Arkansas, to enjoin Eugene Woods or any one under his direction or authority from trespassing upon the strip of land between the old fence row and the Williams survey and to quiet the title in them to all the land south of the old fence row and for such actual damages which he and his crew had done and for punitive damages for trespassing upon the land south of the old fence row.

They alleged and predicated their right to have the title to the eighty-acre tract south of the old fence row quieted and confirmed in them up to and including the old fence row upon the ground that said eighty-acre tract of land was within the government calls of the deed from W. R. Alder to Alex A. Pennington or, if not, because W. R. Alder and Alex A. Pennington had acquired title thereto by seven years actual, open adverse and continuous possession thereof claiming title thereto up to and including the old fence row.

Appellee, Eugene Woods, filed an answer denying that the land up to the old fence row was within the government calls of the Pennington eighty-acre tract, or that Alex A. Pennington and his predecessor in title had acquired the title to same up to and including the old fence row by seven years adverse possession thereof. He also denied that he was liable for any damages, actual or punitive, for attempting to construct a new fence in accordance with the Williams survey.

The trial court found that the old line fence was not the correct division line between the two eighty-acre tracts according to the government calls contained in the respective deeds and that the Penningtons had not acquired title by adverse possession of the eighty acres claimed by them up to and including the old fence line and dismissed the complaint of appellants for want of equity, from which is this appeal.

At the time this litigation arose two surveys had been made for the purpose of locating the division line between the two eighty-acre tracts according to the government survey or government calls, one being the Williams survey and the other a survey made at the instance of W. R. Alder in 1915 by the then county surveyor of St. Francis county, who is referred to in the evidence as a Mr. Newsome. W. R. Alder had this survey made by the county surveyor several years before he sold the eighty-acre tract to Alex A. Pennington and W. R. Alder's son, D. B. Alder, built a wire fence along the line of the Newsome survey, which is now referred to as the old fence row, and the fence constructed by D. B. Alder is the fence which W. R. Alder pointed out to Alex A. Pennington as being the north line of his eighty-acre tract when he sold same to him.

There is no way of telling from the record made in this case which survey is the correct survey as to government calls. The county surveyor who made the first survey is not alive and, of course, could not testify in the case as to the correctness of the survey made by him. The fact is that he was county surveyor at the time he made the survey and had the advantage of more witness trees and more established corners than did the private surveyor, Williams, who was employed to make the survey for Eugene Woods; but, be that as it may, there is no material conflict in the testimony that the old fence row was recognized by every one as the correct division line between the two eighty-acre tracts until Eugene Woods had the new survey made and attempted to make a change in the old fence row.

Neither is there any material conflict in the testimony to the effect that both W. R. Alder and Alex A.

Pennington had actual, open, continuous, hostile and exclusive possession of said eighty-acre tract, claiming to be the owners thereof up to and including the old line fence for more than twenty years. There is no substantial evidence in this record tending to prove that W. R. Alder and Alex A. Pennington only intended to claim adversely to the real or true boundary line according to government calls, but, on the contrary, the decided weight of the testimony is that they held possession of said land up to and including the old fence row, claiming title thereto for more than twenty years, as stated above. This is our conclusion after carefully reading the very voluminous record in this case. The evidence introduced, when abstracted, covers over 150 closely typed pages and it would extend this opinion to an unreasonable length should the substance of the evidence of each witness be set out. We, therefore, content ourselves with registering in this opinion our conclusion based upon the whole testimony.

The actual damage occasioned by entering upon the land in question and attempting to change the old fence row was inconsequential and the proof does not warrant a finding that appellants were damaged more than $10 by reason of the unauthorized entry of Woods. We think there is no ground at all upon which to base a judgment for punitive damages.

The decree is, therefore, reversed and the cause remanded with directions to the trial court to quiet title in appellants to the eighty-acre tract involved up to and including the old fence row and to render judgment in favor of appellants for $10 damages. There can be no difficulty in arriving at the exact location of the old fence row. All the testimony reflects just where it is. In fact there appears in this record a survey of the old fence row made by Mr. Buford and his survey of the old fence row does not seem to be questioned. The Buford survey of the old fence row might be incorporated in the decree to be rendered so as to make the description of the old fence row definite and certain.